NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2663-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

WADIM SAKIEWICZ,

 Defendant-Appellant.
_____________________________________________

 Submitted July 6, 2017 – Decided July 18, 2017

 Before Judges Yannotti and Haas.

 On appeal from Superior Court of New Jersey,
 Law Division, Sussex County, Indictment No.
 15-06-0265.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jack L. Weinberg, Designated
 Counsel, on the brief).

 Francis A. Koch, Sussex County Prosecutor,
 attorney for respondent (Shaina Brenner,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Following a bench trial, defendant was found guilty of simple

assault, contrary to N.J.S.A. 2C:12-1(a)(1), a disorderly persons
offense. The court sentenced defendant to forty-five days in the

county jail. Defendant appeals from the judgment of conviction

dated January 22, 2016. We affirm.

 I.

 A Sussex County grand jury charged defendant with third-

degree terroristic threats, N.J.S.A. 2C:12-3(a) (count one);

third-degree aggravated assault upon a law enforcement officer,

N.J.S.A. 2C:12-1(b)(5)(a) (count two); and fourth-degree attempted

aggravated assault upon a person engaged in the performance of

emergency first-aid, N.J.S.A. 2C:12-1(b)(5)(c) (count three). In

addition, a summons was issued charging defendant with simple

assault, N.J.S.A. 2C:12-1(a)(1).

 In August 2015, while the jury was being selected, defendant

pled guilty to count two of the indictment, which was amended to

simple assault, N.J.S.A. 2C:12-1(a)(1), a disorderly persons

offense. The State agreed to recommend one year of non-custodial

probation and to dismiss the remaining charges. In October 2015,

defendant filed a motion to withdraw the plea. On November 19,

2015, the court granted the motion.

 Thereafter, the parties agreed to proceed to trial on the

simple assault charge, and the State agreed it would not pursue

the other charges. The matter was tried before a judge, sitting

without a jury.

 2 A-2663-15T1
 At the trial, Corporal Frank Schomp of the Sparta Township

Police Department (STPD) testified that on September 1, 2012, he

was on patrol when he encountered defendant at defendant's

residence. Schomp took defendant into custody and placed him in

the STPD's holding cell. One of defendant's hands was handcuffed

to the processing bench. According to Schomp, defendant was upset

because he had been arrested, and he was speaking erratically.

 Schomp left the holding cell but later came back with another

officer. Schomp observed defendant on the floor. Defendant was

still handcuffed to the processing bench and appeared to be

unconscious. Schomp said he shoved defendant with his foot. The

other officer performed a "sternum rub," during which the knuckles

are pressed against an individual's sternum. According to Schomp,

a "sternum rub" is "a fairly painful stimuli," which is used "to

awaken unconscious persons."

 Defendant awoke and began screaming. He said he was diabetic

and wanted medical attention. The officers called for medical

assistance. Defendant remained on the floor until the emergency

medical technicians (EMTs) arrived. Defendant then sat up on his

own. Schomp noted that there was an overhead video camera in the

holding cell, which faced the processing bench. The video camera

records video but not sound. It was operating at the time. Schomp

said defendant had been spitting the whole time he was in the

 3 A-2663-15T1
lockup, and they gave him a garbage can in which to spit "so there

[would] not [be] a mess."

 The video recording was played. The judge noted that on the

videotape, defendant is shown falling on his face. Schomp enters

the room and nudges defendant with his right leg. The other officer

was standing over defendant. The judge could not determine whether

defendant was speaking with the officers, but he noted that

defendant's foot began to move. Defendant eventually got up on his

own and appeared to be speaking with an officer while Schomp left

the room.

 Sergeant Joseph Pensado of the STPD also testified. Pensado

said that on the afternoon of September 1, 2012, he was on duty

at the police station. The patrol sergeant told Pensado to enter

the holding cell with the EMTs to check on defendant. Three EMTs

were present.

 Pensado observed defendant's interaction with one of the

EMTs. According to Pensado, defendant was being "completely

uncooperative." Defendant engaged in "tumultuous behavior" toward

one of the EMTs. Pensado said that defendant was antagonistic and

refused to be treated. Pensado stood near defendant, as the EMT

approached him.

 Pensado testified that defendant was dissatisfied with the

treatment, and the EMT was unable to get near defendant. The EMT

 4 A-2663-15T1
asked defendant some basic questions, but defendant would not

answer without arguing. The EMT approached defendant to take his

blood pressure, and Pensado stepped away from the processing bench.

Defendant continued to be uncooperative. He was yelling and

screaming at the EMT.

 Defendant moved closer to the EMT and raised his hand in a

threatening manner. Pensado reacted. He approached the processing

bench and positioned himself between defendant and the EMT. Pensado

placed his forearm against defendant's chest and pushed him away.

Defendant began to fight.

 Pensado said he attempted to gain control of defendant, but

defendant resisted. Pensado testified that defendant was fighting

and he was aggressive. Defendant did not make any statements.

Pensado said defendant was "yelling and screaming." At some point

during the encounter, defendant kneed Pensado in his testicles,

which caused Pensado pain.

 Pensado testified that he was in uniform at the time, and it

was clear to defendant that he was a law enforcement officer.

Eventually, Pensado was able to restrain defendant, with

assistance from the EMT and another officer. They handcuffed both

of defendant's hands to the processing bench. Defendant continued

"name calling" and "his tumultuous behavior." Pensado tried to

 5 A-2663-15T1
calm defendant. He unsuccessfully attempted to get defendant to

comply with his orders.

 The videotape was played again. Pensado identified the

persons shown on the recording. He said the videotape showed the

EMT trying to evaluate defendant, and the EMT's attempt to take

defendant's blood pressure. Pensado noted that the videotape

showed him restraining defendant from making further contact with

the EMT and defendant fighting. The videotape also showed defendant

yelling at the EMT and the struggle to handcuff defendant.

 Defendant testified that on the morning of September 1, 2012,

he was suffering from jet lag. He was sixty-six years old at the

time. He was tired, had not eaten breakfast, and his blood sugar

level was very low. He stated that, while he was sitting in the

holding cell, he felt very weak. He was shivering and lost

consciousness. He denied that he pretended to lose consciousness.

 At some point, defendant regained consciousness. He recalled

that the officers kicked him. He said he was upset when the EMTs

entered the cell. He expected the EMTs to check his blood sugar

level, but instead they started to check his blood pressure.

 Defendant claimed that one of the EMTs "virtually" put a

trashcan over his head, and Pensado struck him against a wall.

He said he might have raised his voice. He said the EMT had been

abusive and treated him like a dog by putting the trashcan in his

 6 A-2663-15T1
face. Defendant denied threatening the EMT and said he did not

knee Pensado in the testicles. He testified that he believed the

EMTs were part of "a gang" with the officers to assault him. The

videotape was played, and defendant provided his interpretation

of what it depicted.

 On cross-examination, defendant denied that he requested the

trashcan so that he could spit in it. He was shown the videotape

and asked to point out when an EMT abused him. Defendant said the

abuse consisted of treating him "like an animal." Defendant also

stated that the EMT abused him by placing the trashcan over his

head. He said the EMTs were part of "a gang" to wrongly accuse and

assault him.

 A registered nurse at the Sussex County jail testified that

she examined defendant on September 5, 2012. She stated that she

observed swelling and bruising on defendant's posterior left

tricep.

 II.

 The attorneys then provided closing statements. Defendant's

attorney argued that the officers' testimony was not credible. She

stated that Schomp had claimed he nudged defendant with his foot,

but counsel asserted that Schomp kicked defendant while he was on

the floor. Counsel denied that defendant was pretending to be

unconscious. She said he had been in the holding cell for two-and-

 7 A-2663-15T1
one-half hours, without food, drink, or shoes when he passed out.

Counsel said the officers waited four-and-one-half minutes before

coming to defendant's aid.

 Defendant's attorney further argued that defendant did not

have the "mindset" to assault the police officers. She stated that

defendant did not take any action which warranted Pensado to come

over and take control of the situation. Defense counsel said

Pensado slammed defendant against the wall and threw him down on

the bench.

 Counsel stated that the videotape did not show defendant

kneeing Pensado in the testicles. She asserted that it did not

show Pensado reacting to such an assault. She said the evidence

does not rise to the level of a simple assault.

 The assistant prosecutor responded by stating that defendant

had acted out against the EMT, who had been providing assistance

to him. The assistant prosecutor stated that defendant had been

argumentative and confrontational. Defendant did not cooperate

with the medical treatment, and he "clearly expressed his disdain"

for the officers and the EMTs. Pensado tried to calm him down, but

defendant struck Pensado and caused him pain.

 The assistant prosecutor argued that the evidence established

that defendant had committed a simple assault upon the officer.

The prosecutor noted that the videotape showed defendant resisting

 8 A-2663-15T1
as two officers and the EMTs attempted to subdue him. Defendant

tried to resist Pensado's control by moving his arms and legs. The

prosecutor said Pensado's legs were straddling defendant's legs.

They were "entangled" and "intertwined." Defendant disregarded the

risk of causing injury to the officer. He continued to "flail

about." Defendant's movements injured the officer.

 The judge then placed his decision on the record. The judge

found that the officers were performing their lawful duties in

full uniform when they came into contact with defendant. On the

videotape, defendant appeared to be "in a distressed state." He

was handcuffed to the processing bench, and he was speaking

erratically. Defendant was antagonistic. He was upset because he

had been arrested.

 The judge rejected defendant's claim that the officers

mistreated him. The judge stated that he did not believe

defendant's testimony. The judge said he believed what he had seen

on the videotape, and it showed defendant engaging in tumultuous

behavior.

 The judge found that defendant "clearly kneed" Pensado in the

groin area. He said that the officer did not fall down in

excruciating pain, but this did not mean he had not kneed the

officer in the groin area. The judge stated, "I saw it happen,"

and the officer said it happened. The judge said that he believed

 9 A-2663-15T1
the officer's testimony. The judge found defendant guilty "as

charged."

 Later, another judge sentenced defendant to forty-five days

in the county jail, with six days of jail credit for time

previously served. The judge also imposed appropriate penalties.

The judge entered a judgment of conviction dated January 22, 2016.

This appeal followed. On appeal, defendant argues:

 THE STATE FAILED TO MEET ITS BURDEN OF PROOF
 THAT THE DEFENDANT COMMITTED A SIMPLE ASSAULT
 UPON SGT. PENSADO. THE COURT'S FINDINGS CANNOT
 BE REASONABLY REACHED ON SUFFICIENTLY CREDIBLE
 EVIDENCE PRESENT IN THE RECORD AS A WHOLE. THE
 COURT'S FINDINGS ARE SO CLEARLY MISTAKEN THAT
 THE INTERESTS OF JUSTICE DEMAND INTERVENTION
 AND CORRECTION.

 III.

 In an appeal from the judgment of conviction following a

bench trial, we must determine whether the judge's findings "'could

reasonably have been reached on sufficient credible evidence

present in the record,' given the burden of proof, which is proof

beyond a reasonable doubt." State v. Castagna, 387 N.J. Super.

598, 604 (App. Div. 2006) (quoting State v. Johnson, 42 N.J. 146,

161-62 (1964)).

 We must defer to the trial court's findings if they were

"substantially influenced by [the judge's] opportunity to hear and

see the witnesses and to have the 'feel' of the case, which a

 10 A-2663-15T1
reviewing court cannot enjoy." Johnson, supra, 42 N.J. at 161. We

may not set aside the judge's factual findings unless they are

clearly mistaken "and so plainly unwarranted that the interests

of justice demand intervention and correction." Id. at 162.

 Here, defendant was charged with simple assault under

N.J.S.A. 2C:12-1(a), which provides that a person is guilty of

assault if he "[a]ttempts to cause or purposely, knowingly or

recklessly causes bodily injury to another." Thus, the State was

required to prove beyond a reasonable doubt that defendant

attempted to cause or caused bodily injury to Pensado, and that

he acted purposely, knowingly or recklessly in doing so.

 "Bodily injury" is defined as "physical pain, illness or any

impairment of the physical condition." N.J.S.A. 2C:11-1(a).

Furthermore, a person acts "recklessly" when he or she

 consciously disregards a substantial and
 unjustifiable risk that the material element
 exists or will result from his conduct. The
 risk must be of such a nature and degree that,
 considering the nature and purpose of the
 actor's conduct and the circumstances known
 to him, its disregard involves a gross
 deviation from the standard of conduct that a
 reasonable person would observe in the actor's
 situation.

 [N.J.S.A. 2C:2-2(b)(3).]

 On appeal, defendant argues that the trial judge's finding

that he committed a simple assault is not supported by sufficient

 11 A-2663-15T1
credible evidence. He contends the judge's credibility findings

are not supported by the record. He argues that the videotape

shows the officers wrongly viewed him as person who was completely

out of control. He contends the videotape does not support the

officers' assertion that he spit on the floor of the holding cell.

According to defendant, this shows that the officers' credibility

is "suspect."

 Defendant further argues that the State failed to establish

that he acted purposely, knowingly or recklessly. He contends

Pensado "aggressively moved in on" him when the EMT was attempting

to take his blood pressure. He maintains the videotape shows his

actions were in direct response to the officers' manipulation of

his body while he was handcuffed to the bench. According to

defendant, the videotape does not show that he kneed Pensado in

the groin purposely, intentionally or recklessly.

 Defendant claims that, at the time of the alleged assault,

the officers were manhandling and pushing him around. He admits

it is "possible" his knee came into contact with Pensado, but this

was based on his movements and not on any purposeful, intentional

or reckless action on this part. He claims that during the

encounter, he had many opportunities to strike the officer.

Defendant asserts that if he was in an aggressive mood, he could

have spit at the officer's face "at very close range." He also

 12 A-2663-15T1
states that the videotape shows that his knee was between Pensado's

legs a second time, but he did not strike the officer.

 We are convinced that defendant's arguments are entirely

without merit. The record fully supports the trial judge's factual

finding that defendant assaulted Pensado by kneeing him in the

groin. Indeed, as noted, defendant admits that his knee may have

come into contact with the officer's groin area.

 The testimony of the officers, which the judge found credible,

established that defendant had been argumentative. He was angry

that he had been arrested and dissatisfied with the EMTs attempt

to evaluate him. Defendant resisted the officer's attempt to

control the situation. The evidence was more than sufficient to

support the judge's finding that defendant assaulted Pensado

purposely, knowingly or recklessly.

 Affirmed.

 13 A-2663-15T1